UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:21-CR-00092-01** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JOSHUA LABIT** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**ORDER**

Before the Court is a MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (the "Motion") [Doc. 210] filed by Defendant, Joshua Labit on April 10, 2023. The government filed a Response on June 26, 2023. [Doc. 218]. On August 31, 2023, the Court held an evidentiary hearing on Joshua Labit's claim. [Doc. 223]. The parties subsequently submitted post-hearing briefs. [Docs. 226, 234, 235]. After considering the testimony and reviewing the record and relevant case law, the Petition is GRANTED. The Motion [Doc. 210] is therefore DISMISSED and the Judgment [Doc. 195] is restated in the record to allow the Defendant the opportunity to file a notice of appeal.

**I. BACKGROUND**

    *A. Indictment & Guilty Plea*

On November 18, 2021, a federal grand jury – sitting in Lafayette, Louisiana – returned a six-count superseding indictment against four defendants in a drug trafficking conspiracy. [Doc. 50]. As relevant here, Labit was indicted for conspiracy to distribute and possess with the intent to distribute controlled substances, possession with intent to distribute controlled substances, possession of a firearm in

furtherance of a drug trafficking crime, possession of a firearm by a convicted felon, and possession of ammunition by a convicted felon.

On June 2, 2022, Labit pled guilty before the Magistrate Judge, to one count of conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing methamphetamine. [Doc. 141]. His plea was pursuant to a written plea agreement. [Doc. 144]. Labit's plea was accepted by the Court. [Doc. 155].

During the guilty plea colloquy, the Court established that Labit had never been in a mental institution or treated for a mental illness of any kind; was not under the influence of any medications or drugs; was able to assist in his own defense; had discussed the charges with his attorney; and was satisfied with his attorney's representation. Labit also informed the Court that he had not been forced to plead guilty.

Labit also stated that he had seen and received a copy of the charges that had been filed against him and that he understood both the maximum possible sentence he faced and the effect of the sentencing guidelines in his case. Labit further stated that he understood his constitutional right to remain silent; his constitutional right to the assistance of counsel; his constitutional right to trial by jury; his constitutional right to a presumption of innocence that the government must overcome by proving guilt beyond a reasonable doubt; and his constitutional right to cross-examine opposing witnesses and to subpoena witnesses on his behalf.

**B.      *Sentencing***

In the final Presentence Investigation Report ("PSR"), [Doc. 188], the probation office determined that Labit was a career criminal offender under U.S.S.G. § 4B1.1 and assessed a base offense level of 34 because his relevant conduct was determined to involve 1,153.7 net grams of methamphetamine (actual) seized during a traffic stop on March 10, 2021. [Doc. 188, ¶ 30].

The criminal history computation in the PSR established Labit's criminal history category of IV, however, as a career offender his criminal history category was VI. U.S.S.G. § 4B1.1(b). Based on a total offense level of 34 and a criminal history category of VI, Labit's guideline imprisonment range was 262 months to 327 months. [Doc. 188, ¶¶ 54, 82).

Labit filed an objection to the career offender status in the PSR. [Docs. 186, 188-1]. At sentencing, undersigned sustained Labit's objection and declined to find Labit as a career criminal offender under U.S.S.G. § 4B1.1. The Court's ruling reduced Labit's offense level to 33, his criminal history category to IV, and his guideline sentencing range was 188 months to 235 months. [Sealed Doc. 196, p. 1].

On November 3, 2022, the Court issued a guideline sentence pursuant to the amended guideline range. Joshua Labit was sentenced to 220 months imprisonment, five years of supervised release, and a $100 special assessment. [Doc. 195]. Labit was informed by the Court at his sentencing hearing both that he had the right to appeal his sentence, that a notice of appeal must be filed within 10 days of judgment

if he wished to appeal, and that his attorney would continue to represent him during this time period. The judgment was issued on November 7, 2022. [Doc. 195].

### C. *Instant Petition*

On April 10, 2023, Joshua Labit filed a motion pursuant to 28 U.S.C. § 2255, requesting that the District Court vacate, set aside, or correct his sentence. [Doc. 210]. He raised a single issue of ineffective assistance of counsel. Labit argued that his counsel failed to file a requested notice of appeal. *Id.* According to Labit, after sentencing, he told his attorney to appeal his sentence and file a notice of appeal. Upon arrival to the BOP facility, Labit claims "lock-down" was put in place preventing Labit from contacting his family or counsel. After lock-down was lifted in mid-February 2023, Labit claims that he contacted his family to determine the disposition and/or status of his appeal and discovered that an appeal was not pending before the Fifth Circuit. He then alleges that he immediately wrote the Court Clerk for his documents and immediately prepared and filed the Motion *sub judice*. [Doc. 210-1, pp. 2-3].

On April 12, 2023, the Court ordered the Government to respond to the petition by June 12, 2023, requiring the Government to address both the substance of the petition and any procedural infirmities. [Doc. 211]. On June 9, 2023, the Court granted the government's motion requesting a two-week extension, to June 26, 2023, to file a response to Defendant's Motion. [Doc. 217].

On June 29, 2023, the Court ordered the parties to appear for an evidentiary hearing to take evidence on the communications between Labit and his merits

attorney, Ferdinand F. Valteau, III ("Valteau"), regarding his right to appeal and whether Labit specifically instructed his lawyer to file a notice of appeal. [Doc. 219]. The Court also appointed the Federal Public Defender to represent Defendant or recommend counsel for appointment from the CJA Panel to assist and represent Defendant during the evidentiary hearing. *Id.*

On August 31, 2023, the Court held the evidentiary hearing. [Doc. 223]. Valteau testified that on the day of sentencing he met with Labit and reviewed their strategy to argue against the career criminal offender designation. Valteau testified that Labit repeatedly told him that he did not want to spend 20 years in prison, and indicated on the day of sentencing that if the career offender designation was removed, he would stipulate to 19.5 years or 235 months. Valteau's testimony was that since the Court agreed with his argument and removed the career criminal offender designation, Labit was pleased with the outcome of 220 months imprisonment, and that Labit shook his hand and thanked him on his way out of the courtroom. Valteau testified that because the sentence Labit received exceeded their expectations, filing an appeal would not have made sense. Valteau also testified that Labit never told him to file an appeal.

Labit testified that after his sentencing, he told Valteau he wanted to appeal and that Valteau told him he would follow up with him on that issue. He then testified that both he and family members subsequently tried to contact Valteau to check on the status of the appeal but were unsuccessful in reaching him. Labit's mother, Kelly Labit, testified that she left a message with Valteau on the afternoon

of sentencing to see how it went, but her call was not returned. She also testified that her son called her later that evening and told her that he wished to appeal. She further testified that she subsequently tried to contact Valteau approximately once a week, but never received a call back.

## II. APPLICABLE LAW

### A. 28 U.S.C. Section 2255

Labit seeks relief pursuant to 28 U.S.C. § 2255. [Doc. 210]. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (i) that defense counsel's performance was deficient; and (ii) that the deficient performance prejudiced the defendant. *Id.*

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." *U.S. v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." *U.S. v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If a petitioner fails to prove one prong, it is not necessary to analyze the other one. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

Once convicted, a federal defendant has an absolute right to file an appeal. *U.S. v. Pineda-Arrellano*, 492 F.3d 624, 627 (5th Cir. 2007) (citing *Coppedge v. U.S.*, 369 U.S. 438, 441 (1962)). If a defendant informs his attorney that he wishes to file an appeal, the attorney must do so. *Roe v. Flores-Ortega*, 528 U.S. 470, 483-85 (2000). If the attorney fails to file a requested notice of appeal, then the defendant has been denied an "entire judicial proceeding," to which he was entitled. *Id.*, p. 483. Under such circumstances, the attorney's performance is *per se* prejudicial to the defendant, regardless of whether the appeal had any merit. *Id.*

A petition pursuant to § 2255 is the appropriate vehicle through which to challenge an attorney's failure to file a requested notice of appeal. *U.S. v. Flores*, 380 F. App'x 371, 372 (5th Cir. 2010) (unpubl.) (noting that "such a claim is properly asserted in a § 2255 motion"). The petitioner must establish, by a preponderance of the evidence, that there is a "reasonable probability" that, but for counsel's failure to file a notice of appeal, the petitioner would have timely appealed. *Flores-Ortega*, 528 U.S. at 484; *U.S. v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The Court does not require the defendant to "identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." *Id.*

However, even if a defendant does not instruct counsel to file an appeal or clearly convey his desire to appeal, counsel has a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega*, 528 U.S. at 480. Such a duty arises "when there is reason to think either: (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. Moreover, consulting means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. "The existence of a duty to consult is assessed in light of 'all the information counsel knew or should have known.'" *United States v. Cong Van Pham*, 722 F.3d 320, 324 (5th Cir. 2013) (quoting Flores-Ortega, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Cong Van Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). The Supreme Court in *Flores-Ortega* anticipated that "district courts would find a duty to consult 'in the vast majority of cases.'" *Cong Van Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 481).

In the event counsel breaches the constitutionally imposed duty to consult, whether prejudice resulted turns on whether the defendant can "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S.

at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant" in the fact-intensive determination of whether he would have timely appealed but for counsel's deficient failure to consult. *Flores-Ortega*, 528 U.S. at 485. Although "the performance and prejudice prongs may overlap, they are not in all cases coextensive," and the defendant need not demonstrate "his hypothetical appeal might have had merit." *Id.* at 486; *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam).

### III. LEGAL ANALYSIS

#### A. *Failure to File Appeal*

Labit asserts that Valteau was ineffective because he failed to file a requested notice of appeal. Having observed the testimony of the Labit, Valteau, and Labit's mother, Kelly Labit, the Court does not find by a preponderance of the evidence that Labit explicitly instructed Valteau to file a notice of appeal. Valteau's recollection was that Labit was pleased with the length of his sentence because it was better than he expected. The Court finds this testimony credible and likewise has no doubt that Valteau did not believe that an appeal was necessary.

However, the testimony at the evidentiary hearing leads the Court to believe that Valteau failed to adequately discuss the issue of filing an appeal with his client, Labit. Among other things, the subsequent attempts of Labit and his mother to contact Valteau to discuss the status of his appeal and Valteau's failure to return their phone calls, convince the Court that Labit would have timely appealed but for

counsel's deficient failure to consult with him. *Flores-Ortega*, 528 U.S. at 485. Further, given the severity of the 220-month sentence imposed by the Court, there was a plausible reason for Valteau to consider that either a rational defendant, or his specific client, may wish to seek relief on appeal.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that the MOTION TO VACATE UNDER 28 U.S.C. § 2255 [Doc 210] is DISMISSED.

IT IS FURTHER ORDERED that the Judgment [Doc. 195] is reinstated in the record on this date for purposes of filing an appeal.

IT IS FURTHER ORDERED Labit's MOTION TO EXPAND § 2255 ISSUES is DENIED as MOOT.

THUS, DONE AND SIGNED in Chambers on the 14th day of November 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE